E-FILED on     9/17/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIA IRMA DELA TORRE, deceased through her successor in interest, Jose Maximiliano Licea Abaca, MARIA DELA TORRE, individually, and JOSE MAXIMILIANO LICEA ABARCA, individually,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF SALINAS, a public entity, CITY OF SALINAS POLICE CHIEF DANIEL ORTEGA, in his individual and official capacities, POLICE OFFICER STEVEN MATTOCKS, individually, POLICE OFFICER ROBERT BALAORO, individually, and DOES 1 through 10, jointly and severally,<br><br>　　　　　　Defendants. | No. C-09-00626 RMW<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>[Re Docket No. 60] |

Defendants move for partial summary judgment. For the reasons set forth below, the court grants the motion in part and denies the motion in part.

**I. BACKGROUND**

The complaint alleges that Maria Irma Dela Torre ("Irma") suffered from epilepsy and experienced a seizure on July 13, 2008. Compl. ¶ 17; Ans. ¶ 11. Her family called 911, requesting an ambulance to take her to the hospital. Compl. ¶ 17. Irma ran out of the house and locked herself

in her sister's van, which was parked in the driveway. *Id.* Police officers Steven Mattocks and Robert Balaoro arrived at the scene and approached the van. *Id.* ¶ 18; Ans. ¶ 12. Irma came out of the van. *Id.* Plaintiffs allege that Mattocks and Balaoro then tasered her and shot her three times, resulting in her death. *Id.* ¶ 19.

Plaintiffs Maria Dela Torre ("Maria"), Irma's mother, and Jose Maximiliano Licea Abarca ("Licea"), Irma's husband, brought suit, alleging the following counts: (1) Count One – violation of 42 U.S.C. § 1983 by Balaoro, Mattocks, and Does 1-10; (2) Count Two – violation of 42 U.S.C. § 1983 by the City of Salinas, Chief of Police Daniel Ortega, and Does 1-10; (3) Count Three – violation of California Civil Code § 52.1 by all defendants; (4) Count Four – negligence by all defendants; (5) Count Five – assault and battery by all defendants; (6) Count Six – violation of California Civil Code § 51.7 by all defendants; and (7) Count Seven – violation of Licea's rights under California Civil Code § 51.7 by Balaoro, Mattocks, and the City of Salinas.

Plaintiffs have stipulated to dismissal of the following: (a) Ortega as a defendant in this action; (b) Counts Two, Six, and Seven; (c) Maria and Licea's individual claims under Count Three; and (d) Maria's claims as Irma's successor in interest. Therefore, the claims that remain are: (a) Count One; (b) Count Three, alleged by Licea as Irma's successor in interest; (c) Count Four; and (d) Count Five.

## II. ANALYSIS

### A. Maria's Claims

After the stipulated dismissal of various claims, Maria's remaining claims are Count One, Count Four, and Count Five.

#### 1. Count One – Violation of 42 U.S.C. § 1983

In Count One, Maria alleges that the actions of Officers Balaoro and Mattocks deprived her of her First, Fourth, and Fourteenth Amendment rights.

##### a. Standing

Defendants argue that Maria lacks standing to sue for violation of constitutional rights because she is a resident and citizen of Mexico and was in Mexico at the time Irma was killed. It is undisputed that Maria is not a United States citizen. However, "aliens receive constitutional

protections when they have come within the territory of the United States and developed substantial connections with the country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990).

There is no question that an alien who is a lawful permanent resident of the United States and remains physically present in the United States has constitutional rights. *See Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953). In this case, Maria – who has a permanent resident card, Dkt. No. 61 Ex. E – was not in the United States at the time Irma was killed. The parties disagree as to whether a lawful permanent resident must be physically present in the United States at the time of the alleged violation in order to assert a violation of constitutional rights. Defendants argue that physical presence in the United States at the time of the alleged violation is required, while plaintiffs contend that it is not.

To illustrate the effect of a contemporaneous presence requirement, consider the following example: Jane Doe has been a legal permanent resident of the United States for ten years, and she owns a home in California. One day, she goes on a short business trip to Mexico, and while she is gone, the police search her home. If contemporaneous physical presence in the United States were a prerequisite to Fourth Amendment protection, then whether Jane Doe may assert a violation of her Fourth Amendment rights would depend on whether she happened to be inside the United States or outside its borders at the exact moment of the search. Not only does this result seem illogical, it is contrary to Supreme Court precedent.

"[T]he alien . . . has been accorded a generous and ascending scale of rights as he increases his identity with our society." *Verdugo-Urquidez*, 494 U.S. at 269 (quoting *Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950)). Thus, an alien who is merely visiting the United States relies upon her physical presence in this country to establish a sufficient connection with the United States to assert a violation of a constitutional right. Upon leaving the United States, such a non-resident alien leaves her "constitutional rights at the water's edge." *Ibrahim v. Department of Homeland Security*, 2009 WL 2246194, at *7 (N.D. Cal. Jul. 27, 2009). However, as an alien increases her ties to the United States, by becoming a lawful permanent resident and then applying for citizenship, her constitutional rights increase accordingly. Thus, unlike non-resident aliens, who lose their constitutional rights the moment they step outside of the United States, *see, e.g., id.* ("The Constitution . . . does not apply

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT—No. C-09-00626 RMW
CCL                                                       3

extraterritorially to protect *non-resident* aliens outside our country.") (emphasis added), resident aliens enjoy more enduring constitutional rights.

In *Kwong Hai Chew*, the Supreme Court was faced with the question of whether Kwong, a lawful permanent resident of the United States, had a constitutional right to due process, despite having left the territorial confines of the United States for several months. 344 U.S. at 591. The Court noted the difference between an alien seeking admission for the first time into the United States and an alien seeking re-entry who had been a legal resident of the United States for some time: "The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. But once an alien lawfully enters and resides in this country, he becomes invested with the rights guaranteed by the Constitution to all people within our borders." *Id.* at 597 n.5. The Court then concluded that the constitutional rights enjoyed by a lawful permanent resident is not terminated as soon as he steps foot outside of the United States. *See id.* at 600 ("We do not regard the constitutional status which petitioner indisputably enjoyed prior to his voyage as terminated by that voyage."). Kwong thus continued to have the constitutional right to due process despite having left the United States for four months.[1] *Id.* at 601.

The Supreme Court has also suggested that rather than focusing solely on whether an alien was physically present in the United States at the time of the alleged violation, courts should consider whether the allegedly wrongful conduct took place in the United States. In *Verdugo-Urquidez*, the alien was in the United States at the time of the allegedly unreasonable search, but the search itself took place in Mexico. 494 U.S. at 272. The Court emphasized the fact that the alleged constitutional violation took place outside the United States, and thus recognizing Fourth Amendment rights under these circumstances would "have significant and deleterious consequences for the United States in conducting activities beyond its boundaries." *Id.* at 273. Accordingly, the Court held that the alien could not assert a violation of the Fourth Amendment even though he had

---

[1] The fact that Kwong was only gone for four months is important. In *Shaughnessy v. United States*, the Supreme Court distinguishes between Kwong's four-month-long absence and the nineteen-month-long absence of an alien who had previously lived in the United State for twenty-five years. 345 U.S. 206, 213-14 (1953). The Court held that the alien who had left the United States for nineteen months was not entitled to constitutional protections because such a protracted absence was a clear break in his continuous residence in the United States. *Id.* at 214.

been on United States soil at the time of the search: "We do not think the applicability of the Fourth Amendment to the search of premises in Mexico should turn on the fortuitous circumstance of whether the custodian of its nonresident alien owner had or had not transported him to the United States at the time the search was made." *Id.* at 272.

Following this reasoning, the Ninth Circuit focused on where the conduct contributing to the alleged constitutional violation took place rather than on where the alien was physically located at the time of the allegedly wrongful conduct in *Wang v. Xiao*, 81 F.3d 808 (9th Cir. 1996). The Ninth Circuit thus rejected the argument that an alien may not assert a constitutional violation based on acts that occurred when the alien was not on United States soil, pointing out that the allegedly wrongful conduct took place in the United States and "to accept the government's argument would artificially place beyond our purview any actions taken prior to the time Wang arrived in the United States, even those actions that led directly to, and are inextricably intertwined with, the ultimate violation of his due process rights. We refuse to draw such an artificial line." *Id.* at 818 n.16 (internal citations and quotations omitted).

The court likewise refuses to draw such an artificial line in this case. Assuming Maria had been a longtime legal permanent resident of the United States and had not been absent from the United States for prolonged periods of time, the applicability of the First and Fourteenth Amendments to the police officers' conduct, which occurred in California, should not turn on the fortuitous circumstance of whether Maria happened to be physically present in the United States at the time her daughter was shot.

The court thus considers the evidence regarding Maria's legal status in the United States and the extent to which she lived in the United States. On one hand, Maria has produced a permanent resident card, which indicates that she has been a permanent resident of the United States since 1999. Dkt. No. 61 Ex. E. She testified that she traveled frequently between Mexico and the United States and had been living in California for two to six months each year for the past ten years. Dkt. No. 61 Ex. C ("Maria 11/17/09 Dep.") 43:17-21; Dkt. No. 61 ¶ 5. On the other hand, Maria also testified that she had never lived in the United States as a resident and that she had never had any documentation for living in the United States. Maria 11/17/09 Dep. 31:5-7, 53:10-13. Her Mexican

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT—No. C-09-00626 RMW
CCL                                        5

1  passports contain only has two stamps indicating entry into the United States between 1999 and
2  2008. Dkt. No. 61 ¶ 9. In light of this conflicting evidence, the court finds that there are genuine
3  issues of material fact regarding whether Maria was a legal permanent resident of the United States
4  at the time her daughter, Irma, was killed and whether she had been absent from the United States
5  for prolonged periods of time. The court therefore denies defendants' motion for summary
6  adjudication that Maria lacks standing to sue for violation of her constitutional rights, without
7  prejudice to defendants bringing a renewed summary judgment motion on this issue if new evidence
8  becomes available.

### b. Fourteenth Amendment – Excessive Force

Defendants move for summary adjudication that Maria does not have a Fourteenth Amendment cause of action for excessive force. Maria has not opposed this motion. Maria's opposition papers state that her Fourteenth Amendment claim is based on the right to familial association. Dkt. No. 66 at 9, 11. The court therefore grants defendants' motion in this regard.

### c. Fourth Amendment

Defendants move for summary adjudication that Maria does not have a Fourth Amendment cause of action either: (1) for personally being subjected to excessive force, or (2) based on the right to familial association. Maria has not opposed this motion. Her opposition papers state that her claims for violation of her right to familial association are based solely on the First and Fourteenth Amendment and that her Fourth Amendment claim is limited to a wrongful death claim based on violation of Irma's Fourth Amendment rights. Dkt. No. 66 at 9, 11. The court therefore grants defendants' motion in this regard.

### d. First Amendment – Familial Association

Defendants move for summary adjudication that Maria does not have a First Amendment cause of action based on the right to familial association. According to defendants, intimate relationships are protected by the Fourteenth Amendment, while expressive association is protected by the First Amendment. It is true that "[i]n protecting certain kinds of highly personal relationships, the Supreme Court has most often identified the source of the protection as the due process clause of the fourteenth amendment, not the first amendment's freedom to assemble." *IDK,*

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT—No. C-09-00626 RMW
CCL                                             6

*Inc. v. County of Clark*, 836 F.2d 1185, 1192 (9th Cir. 1988) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984)). However, "a single association may have intimate and expressive features and therefore be entitled to claim the protection of both the first and fourteenth amendments." *Id.* Accordingly, in *Lee v. City of Los Angeles*, the Ninth Circuit held that a mother's right to familial association with her son was protected by both the First and the Fourteenth Amendment. 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545 (1987)) ("the First Amendment protects those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life"). The court therefore finds that Maria can assert a First Amendment claim based on the right to familial association.

### 2.     Count Five – Assault and Battery

Defendants move for summary adjudication that Maria does not have a claim for personally suffering either assault or battery. Maria has not opposed this motion. Her opposition papers state that her assault and battery claims are wrongful death claims based on the assault and battery of Irma. Dkt. No. 66 at 12. The court therefore grants defendants' motion in this regard.

## B.     Licea's Individual Claims

After the stipulated dismissal of various claims, Licea's remaining individual claims are Count One, Count Four, and Count Five.

### 1.     Count One – Violation of 42 U.S.C. § 1983

In Count One, Licea alleges that the actions of Officers Balaoro and Mattocks deprived him of his First, Fourth, and Fourteenth Amendment rights.

#### a.     Fourteenth Amendment – Excessive Force

Defendants move for summary adjudication that Licea does not have a Fourteenth Amendment cause of action for excessive force. Licea has not opposed this motion. Based on Licea's opposition papers, it appears that his Fourteenth Amendment claim is based on the right to familial association. Dkt. No. 65 at 4. The court therefore grants defendants' motion in this regard.

**b.      Fourth Amendment**

Defendants move for summary adjudication that Licea does not have a Fourth Amendment cause of action either: (1) for personally being subjected to excessive force, or (2) based on the right to familial association. Licea has not opposed this motion. His opposition papers concede that any claim he has individually is premised in the First and Fourteenth Amendments and that his Fourth Amendment claim is a wrongful death claim based on violation of Irma's Fourth Amendment rights. Dkt. No. 65 at 4. The court therefore grants defendants' motion in this regard.

**c.      First Amendment – Familial Association**

Defendants move for summary adjudication that Licea does not have a First Amendment cause of action based on the right to familial association. According to defendants, intimate relationships are protected by the Fourteenth Amendment, while expressive association is protected by the First Amendment. For the same reasons discussed in the previous section regarding Maria's First Amendment claim, the court finds that Licea can assert a First Amendment claim based on the right to familial association.

**2.      Count Five – Assault and Battery**

Defendants move for summary adjudication that Licea does not have a claim for personally suffering either assault or battery. Licea has not opposed this motion. His opposition papers state that his assault and battery claims are wrongful death claims based on the assault and battery of Irma. Dkt. No. 65 at 4. The court therefore grants defendants' motion in this regard.

**C.      Licea's Claims as Irma's Successor in Interest**

After the stipulated dismissal of various claims, Licea's remaining claims as Irma's successor in interest are Count One, Count Three, Count Four, and Count Five.

**1.      Count One – Violation of 42 U.S.C. § 1983**

In Count One, Licea alleges that the actions of Officers Balaoro and Mattocks deprived Irma of her First, Fourth, and Fourteenth Amendment rights.

### a. Fourteenth Amendment – Excessive Force

Defendants move for summary adjudication that Licea, as Irma's successor in interest, does not have a Fourteenth Amendment cause of action for excessive force. Licea has not opposed this motion. The court therefore grants defendants' motion in this regard.

### b. Fourth Amendment – Familial Association

Defendants move for summary adjudication that Licea, as Irma's successor in interest, does not have a Fourth Amendment cause of action based on the right to familial association. Oddly, although Licea conceded in his opposition papers that his personal claim based on familial association was limited to the First and Fourteenth Amendments, he takes the position that as Irma's successor in interest, he may assert a Fourth Amendment claim based on the right to familial association. Dkt. No. 65 at 4, 7. However, Licea cites no cases in support of his contention that the Fourth Amendment protects the right to familial association. The court therefore grants defendants' motion in this regard.

### c. First Amendment – Familial Association

Defendants move for summary adjudication that Licea, as Irma's successor in interest, does not have a First Amendment cause of action based on the right to familial association because intimate relationships are protected by the Fourteenth Amendment, while expressive association is protected by the First Amendment. As discussed in the earlier section regarding Maria's First Amendment claim, the court rejects this argument.

## 2. Count Three – California Civil Code § 52.1

Licea, as Irma's successor in interest, alleges that defendants violated Irma's rights under California Civil Code § 52.1 by interfering with her exercise or enjoyment of various rights secured by the United States and California Constitutions. Defendants move for summary adjudication that Licea lacks standing to assert a claim for violation of California Civil Code § 52.1 as Irma's successor in interest. According to defendants, claims under § 52.1 do not survive the death of the individual whose rights were interfered with and cannot be asserted by the decedent's successor in

interest. Defendants rely on *Bay Area Rapid Transit Dist. v. Super. Ct.*, 38 Cal. App. 4th 141 (1995) ("*BART*"), to support their contention.[2]

In *BART*, plaintiffs alleged that an officer's conduct, which resulted in their son's death, interfered with their constitutional right to parent and thus violated § 52.1.[3]  *Id.* at 144. Based on the statutory language of § 52.1, which only allows the individual whose rights were interfered with to bring an action "in his or her own name and on his or her own behalf," the court concluded that "[t]he Bane Act is simply not a wrongful death provision. It clearly provides for a *personal* cause of action for the victim of a hate crime." *Id.* Reading § 52.1 in conjunction with § 51.7, which provides the right to be free from violence or threats of violence on account of various characteristics, such as race or religion, the court held that § 52.1 claims can only be brought by plaintiffs who themselves have been subject to violence or threats. *Id.* Because the Bane Act provides no derivative liability for persons who were not present and did not witness the violence or threats, and plaintiffs' claim was limited to a wrongful death claim based on violation of their own constitutional rights, the court sustained defendant's demurrer on this cause of action. *Id.* at 144-45.

In *Moore v. County of Kern*, the court considered the *BART* decision and concluded that it only precluded a wrongful death action under § 52.1 and did not preclude a survival action under § 52.1. 2007 WL 2802167, at *5-6 (E.D. Cal. Sept. 23, 2007). The court agrees with the careful analysis of the *BART* decision by the *Moore* court. "Unlike a wrongful death cause of action, a survival cause of action is not a new cause of action that vests in heirs on the death of the decedent, but rather is a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives the event." *Id.* at *6. Unlike the *BART* plaintiffs' claim, which was based on a violation of their own constitutional rights (the right to parent), the cause of action asserted by Licea, as Irma's successor in interest, is based on the violation of Irma's constitutional rights. Licea alleges that Irma was personally subjected to violence or threats, and he is asserting a claim in Irma's name

---

[2] Though defendants cite other cases as well, those cases simply cite to the *BART* decision and do not provide independent analysis.

[3] Plaintiffs also alleged two other § 52.1 claims, but these were not addressed in the published portion of the opinion.

United States District Court
For the Northern District of California

and on her behalf, as required by § 52.1(b). Because Licea, as Irma's successor in interest, asserts a survival claim (rather than a wrongful death claim) under § 52.1, the *BART* decision is inapplicable to this case.

California Code of Civil Procedure § 377.20 provides that "[e]xcept as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." Defendants have not pointed to any statutory provision that would prevent Irma's § 52.1 cause of action from surviving her death. Therefore, Licea, as Irma's successor in interest, can assert a claim for violation of § 52.1.

### III.  ORDER

For the foregoing reasons, the court:

Count One:

1. Grants summary adjudication that Maria, Licea, individually, and Licea, as Irma's successor in interest, do not have Fourteenth Amendment claims for excessive force;

2. Grants summary adjudication that Maria and Licea, individually, do not have Fourth Amendment claims either: (1) for personally being subjected to excessive force, or (2) based on the right to familial association;

3. Grants summary adjudication that Licea, as Irma's successor in interest, does not have a Fourth Amendment claim based on the right to familial association;

Count Five:

4. Grants summary adjudication that Maria and Licea do not have claims for personally suffering either assault or battery; and

5. Denies without prejudice defendants' motion for summary judgment in all other respects.

DATED:     9/17/10

RONALD M. WHYTE  
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT—No. C-09-00626 RMW  
CCL                                                                11